IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MALIK JAMES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:08cv445-CSC |
| | ) | (WO) |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I. Introduction**

The plaintiff, Malik James ("James"), applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*, alleging that he was unable to work because of a disability. His application was denied at the initial administrative level. James then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

now before the court for review pursuant to 42 U.S.C. § 405 (g) and § 1631(c)(3). Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to entry of final judgment by the United States Magistrate Judge. Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

## II. Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. § 404.1520, §416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. Administrative Proceedings

James was 37 years old at the time of the hearing before the ALJ. (R. 98, 227.) He completed the eleventh grade and received a graduate equivalency diploma. (R. 109.) James' prior work experience includes work as a truck driver, forklift operator, painter, tire

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

changer, sandblaster, auto mechanic, roofer, welder, and dishwasher. (R. 232.) James alleges that he became disabled due to sleep apnea, migraine headaches, and back pain. (R. 231-233, 239.) The ALJ found that James suffered from severe impairments of sleep apnea and mild degenerative disc disease and a non-severe impairment of headaches. (R. 15.) Next, the ALJ determined that James has the residual functional capacity to perform medium work activity and that he is capable of performing his past relevant work as a dishwasher. (R. 20.) Accordingly, the ALJ concluded that James is not disabled. (R. 21.)

## IV.  THE PLAINTIFF'S CLAIMS

James presents the following issues for the court's review:

(1)    The ALJ's RFC findings are not based on substantial evidence.

(2)    The ALJ erred in failing to develop the record.

(3)    Defendant erred through the action of the Appeals Council in failing to remand for review of important new and material evidence.

(Doc. No. 12, pp. 5, 8.)

## V.  DISCUSSION

A disability claimant bears the initial burden of demonstrating an inability to return to his past work. *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990). In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and his family

or friends, and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983).

James asserts that the ALJ's findings that he is capable of performing medium work are not based on substantial evidence. He argues that the ALJ improperly discounted the findings in a functional capacity evaluation prepared by Rehab Partners, in which an evaluator found that he is able to perform no more than sedentary work. James also contends that the ALJ erred in determining that Dr. Dewey Jones' assessment indicates that he is capable of medium work. In addition, James asserts that the ALJ should have more fully developed the record because the ALJ's "de facto rejection" of Dr. Jones' opinion and Rehab Partner's residual functional capacity evaluation "left [the ALJ] with no medical source opinion on which to rely." (Doc. No. 12, p. 8.)

In this case, the ALJ relied on the opinion of a non-examining consultative physician, Dr. W. B. Stonecypher, when determining that James has the residual functional capacity to perform medium work. The ALJ accorded little weight to a functional capacity evaluation completed by Rehab Partners, in which a certified work capacity evaluator assessed that James' back condition would prevent him from performing no more than sedentary work. Specifically, the ALJ found that there are no medical findings to support a residual functional capacity of sedentary work and that an MRI of James' spine indicated no more than minimal degenerative changes. The ALJ gave controlling weight to the opinion of James' treating physician, Dr. Jones, specifically noting that the orthopaedic surgeon found "a lack of objective findings and assessed a five percent back impairment." (R. 19.) The evidentiary

5

materials indicate that, on October 12, 2005, Dr. Stonecypher reviewed medical records indicating James' suffers from sleep apnea and determined that James would be able to occasionally lift or carry no more than 50 pounds, frequently lift or carry no more than 25 pounds, and stand, walk, or sit no more than 6 hours in an 8-hour workday. (R. 158-165.)

On June 22, 2006, James suffered a back injury after moving a concrete block at work. Pursuant to his employer's worker's compensation plan, James was referred to Dr. Ammar Saem Aldahar. (R. 200.) James went to Dr. Aldahar's office, complaining of lower back pain. (*Id.*) An x-ray of James' spine indicated that his vertebrae were well aligned with no evidence of any fractures or bone disease. (R. 205.) Dr. Aldahar prescribed Lortab, Flexeril, and Advil. (R. 200.) On June 29, 2006, James returned to Dr. Aldahar's office for a follow-up visit, complaining of back pain radiating to the lower extremities. (*Id.*) Dr. Aldahar ordered an MRI and recommended that James continue with his current medication. (*Id.*) The following day, an MRI of James' lumbar spine indicated a generalized annular bulge at L4-5 and mild degenerative disc and facet changes. (R. 191, 194.)[4] On July 10, 2006, Dr. Aldahar found that the MRI indicated mild disc disease and advised that James should return to work in one week. (R. 200.) The next day, James returned to Dr. Aldahar's office and complained of back pain with no relief of his symptoms. (R. 197.) Dr. Aldahar

---

[4] The documentation from Open MRI of Sylacauga lists Dr. Hisham Hakim as the physician who ordered the MRI. (R. 191, 194.) A handwritten notation at the bottom of the page, however, indicates that a new employee failed to "take [patient's] previous doctor out of system and put new doctor in." (R. 194.) Thus, it is clear that Dr. Hakim was not the physician who ordered the MRI of James' spine.

recommended that James continue with his current pain medication and muscle relaxant and scheduled an epidural block. (*Id*.) On July 17, 2006, James indicated that he did not wish to receive an epidural block and requested a second opinion. (*Id*.) On July 24, 2006, and August 23, 2006, Dr. Aldahar renewed James' prescriptions of Lortab. (*Id*.)

In accordance with the worker's compensation plan, James was subsequently referred to Dr. Jones. On July 19, 2006, Dr. Jones conducted an evaluation and diagnosed James as suffering from lumbar disc syndrome. (R. 190.) Dr. Jones recommended that James receive one or two epidural blocks and a physical therapy evaluation, that he continue with his prescribed medication of Flexeril and Lortab for pain, and that he should return to work with some restrictions "possibly . . . about six weeks out if the patient responded to appropriate recommendations." (R. 190.) At some point after his initial visit to Dr. Jones' office, James received an epidural block. (R. 186.)

On August 9, 2009, James returned to Dr. Jones for a follow-up visit and reported that the epidural block did not provide much relief. (*Id*.) Dr. Jones noted James appeared to suffer from painful flexion and extension of the spine and that he was "very sensitive to light touch on his spine." (*Id*.) Dr. Jones recommended that James receive a morphine block, specifically noting that, if the morphine block were ineffective, he was "not so sure that [he is] going to be able to help him and they might just want to get a pain consultation for him, another opinion or panel of IV." (*Id*.)

On August 23, 2006, James returned to Dr. Jones' office, reporting that he opted not to receive a morphine block. (R. 185.) Dr. Jones noted that James stated that his back pain

was worse and that "there is no good reason to account for it because the wife said he is not doing a lot at home." (*Id.*)  In addition, Dr. Jones entered the following notations:

> He did not appear to be in any acute distress.  Knee and ankle reflexes are equal.  Straight leg raising produced some degree of back discomfort.
>
> He had an MRI on his back that showed some mild degenerative changes in his spine.
>
> I am just having a little difficulty discerning this gentleman's degree of pain.  He said he cannot sit any length of time. His job is driving trucks, loading and unloading, working on sheets, pallets and so forth what I can gather from him.  I think what I recommend doing now is about three months in to his injury I suggest that he have a functional capacity examination and impairment exam to see if they can find some level of work.  I told the patient that if they were happy with my assessment and/or the insurance company is not happy that might want to get another opinion or panel of IV but I do not know that I really have a whole lot more to offer this gentleman.  I think it is going to be a matter of some pain management and maybe finding him an appropriate thing to do but I do not think there is any surgical intervention here and he has been somewhat resistant to efforts to do anything by way of block but that is his option. . . .

(*Id.*)

On September 6, 2006, a certified work capacity evaluator at Rehab Partners completed a functional capacity evaluation.  After conducting testing, the evaluator determined that James gave consistent effort and that "His Physical Demand Strength Level, as determined by the FCE for an *occasional basis*, is <u>SEDENTARY</u>."  (R. 173.) (Emphasis in original.)  The evaluator recommended that James should lift and carry no more than ten pounds and limit any crouching, kneeling, standing, sitting, and walking tasks "to an

occasional basis (1-33% of an 8 hour work day)." (*Id.*)

During a follow-up visit on September 13, 2006, Dr. Jones reviewed the results of the functional capacity evaluation and determined that "as far as [he could] discern from this I do not read much more than this patient doing what I think is maybe sedentary work." (R. 172.) Dr. Jones further noted:

> On examination today, he did not appear to be in any acute distress. Knee and ankle reflexes are equal. Straight leg raising produced some discomfort on the left.
>
> I think based upon his functional examination that defines what he can do. I would say that he was going to probably have in my judgment a 5% impairment to his back that might be on a permanent basis but that is just on a judgmental basis that are kind of limited for objective findings here and his wife wanted to know what he is going to do if he cannot go back and drive his truck. I told her that I did not know and maybe hopefully there would be some rehabilitation involved with that but they would need to sort that out with the Workman's Comp. . . .

(*Id.*)

In assessing the medical evidence in a Social Security case, the ALJ is "required to state with particularity the weight he gave the different medical opinions and the reasons therefor." *Shafarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). The opinion of a claimant's treating physician must be accorded substantial weight unless good cause exists for not doing so. *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986.); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). However, the weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence of the claimant's impairment. *Wheeler v.*

*Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). The ALJ may "reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). *See also Shafarz, supra*.

In this case, the ALJ relied on the opinion of James' treating physician, Dr. Jones, when determining that James has the residual functional capacity to perform medium work.[5] Specifically, the ALJ determined that Rehab Partner's assessment that James has the functional capacity to perform sedentary work "is not supported by the medical findings," but that "Dr. Jones' assessment is consistent with the findings and is accorded controlling weight." (R. 19.) The medical records indicate that, after reviewing Rehab Partners' assessment that James could perform no more than sedentary work, Dr. Jones determined that James "was going to probably have in [his] judgment a 5% impairment to his back that might be on a permanent basis but that is just on a judgmental basis that [is] kind of limited for objective findings here." (R. 172.) (Emphasis added.) James argues that Dr. Jones' opinion that he suffered a 5% impairment to his back establishes that he could perform no more than sedentary work. Although the doctor summarized the evaluator's findings, he did not at any point adopt Rehab Partners' findings or specifically find that James was able to

---

[5] The ALJ also relied on the opinion of Dr. Stonecypher, a non-treating physician, when determining that James has the residual functional capacity to perform medium work. Dr. Stonecypher's assessment was conducted eight months before the amended date of onset in October 2005. In addition, the record indicates that Dr. Stonecypher's opinion was based solely on medical records concerning James' sleep disorder and did not include James' complete medical history. Therefore, to the extent the ALJ may have relied on Dr. Stonecypher's opinion as support for the proposition that James' back condition would not have prevented him from performing medium work, this court cannot conclude that the ALJ's determination is supported by substantial evidence. Nonetheless, there is substantial evidence in the record which supports the Commissioner's determination that James is not disabled.

perform no more than sedentary work.  Instead, Dr. Jones merely speculated that, based on "limited . . . objective findings," James "was going to probably have . . . a 5% impairment to his back." (R. 172.)

Moreover, the functional capacity evaluation was completed by a "certified work capacity evaluator" at Rehab Partners.  An evaluator does not qualify as an acceptable medical source for establishing a medical impairment.  *See* 20 C.F.R. §§ 404.1513(a), 416.913(a).  *See also Stoltz v. Astrue*, No. 3:0cv429, 2009 WL 161329, *5 (S.D. Ohio, Jan. 22, 2009) (noting that the physical therapist was not an acceptable medical source and that it "appear[ed] that the evaluator simply accepted several of Plaintiff's subjective complaints and allegations which have no medical support in the record"); *Young v. Astrue*, No. 7:05cv1027 (NAM/GHL), 2008 WL 4518992, *10 (evaluator at Joint and Spine Center not an acceptable medical source); *Ouellette v. Apfel*, No. C-99-2094-PJH, 2000 WL 1262642, *15 (N.D. Cal., Aug. 24, 2000) ("Vocational evaluators and physical therapists are not considered acceptable medical sources.").  Therefore, even if Dr. Jones had adopted Rehab Partner's report that James is able to perform no more than sedentary work, the evaluator's assessment is not controlling, as a certified work capacity evaluator is not an acceptable medical source.  Consequently, the ALJ's determination that there are no medical findings to support a residual functional capacity of sedentary work is supported by substantial evidence.

More importantly, James' failure to follow prescribed medical treatment precludes a finding of disability in this case.  The Commissioner may deny benefits for the failure to

follow treatment when the claimant, without good reason, fails to follow a prescribed course of treatment that could restore the ability to work. *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990); *McCall v. Bowen*, 846 F.2d 1317, 1319 (11th Cir. 1988). The determination that prescribed treatment would restore a claimant's ability to work must be based on substantial evidence. *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988). When noncompliance with a prescribed course of treatment is at issue, the ALJ has a duty to fully investigate the possible reasons for the alleged noncompliance. *Lucas v. Sullivan*, 918 F.2d 1567, 1572-73 (11th Cir. 1990).

The medical records indicate that James repeatedly refused to receive epidural or morphine blocks as prescribed. (R. 185-86, 197.) Dr. Aldahar's and Dr. Jones' notes indicate that James suffered from mild degenerative changes in his spine and a generalized annular bulge at L4-5 and that he was diagnosed as suffering from "mild disc disease." (R. 185, 191, 194, 200.) On August 23, 2006, Dr. Jones noted that, although James reported that his back pain had worsened, "there is no good reason to account for it," and assessed that treating James' back condition would "be a matter of **some pain management** and maybe **finding him an appropriate thing to do** but [that he did] not think there is any surgical intervention here and he has been somewhat **resistant to efforts to do anything by way of block**. . . ."[6] (R. 185.) (Emphasis added.) Thus, there is substantial evidence indicating that

---

[6] Epidural and morphine blocks are routinely used to treat back pain. *See*, *e.g.*, *Nazario v. Astrue*, No. 07-61833-CIV, 2009 WL 347424, *5 (S. D. Fla., Feb. 11, 2009); *Echols v. Astrue*, No. 3:07cv879-WKW, 2008 WL 4767485, *3-4 (M.D. Ala., Oct. 29, 2008).

James failed to follow a prescribed course of treatment that could restore his ability to work.

In addition, James has failed to offer any "good reason" for his failure to receive an epidural or seek other medical treatment.[7] During the hearing, a discussion concerning James' non-compliance with prescribed treatment for his back condition and his failure to continue seeking treatment from a neurologist for headaches occurred as follows:

ALJ: Has any of these doctors suggested surgery?

James: No, sir.

ALJ: They have not suggested surgery?

James: No, sir.

ALJ: Have they suggested another epidural?

James: They suggested a morphine block.

ALJ: This would be pain management of some kind?

James: Pain management.

ALJ: Counselor, do you have any other questions?

Counsel: Let me just ask you, if I may, about Dr. [Hakim] because you did see him in October of '05. And he was going to start you on some medication and see you again in three weeks, but that didn't happen. Is that right?

James: Yes.

---

[7] The court notes that nothing in the medical records indicates that James is unable to afford medical treatment. During the hearing, James testified that he received a worker's compensation settlement of $110,000 after hurting his back at work. (R. 236.) In addition, James acknowledged that he "thought about paying to go back and see Dr. Aldeher, Dr. Jones, or any other doctor," but that he did not do so. (R. 237.)

| | |
|---|---|
| Counsel: | You did not see him – |
| James: | I didn't. |
| Counsel: | Again? Why not? |
| James: | There was no reason. |
| Counsel: | He wasn't helpful. |
| James: | He was helpful but I, I just didn't go back to see him. |
| Counsel: | You, is it, is it fair to say you just saw it as pain management with no offer of any other type of treatment? |
| James: | You could say that. |

(R. 238.) James also acknowledged that he "thought about paying to go back and see Dr. Aldeher, Dr. Jones, or any other doctor" but that he did not do so. (R. 237.) James' avoidance of treatment for "no reason" does not establish a "good reason" to forgo treatment for his impairments. This court therefore concludes that the Commissioner's decision to deny benefits is supported by substantial evidence, as it is clear that, without good reason, James' failed to follow a prescribed course of treatment that could restore his ability to work.

This court also notes that the ALJ properly discredited James' allegations of pain. During the hearing before the ALJ, James testified that he suffers from migraine headaches at least two or three times a week, that he spends most of the day laying down, and that, "if [he] sit[s] too long, not only would [he] have back injury, but [he] would doze off and go to sleep." (R. 236.)

14

The Eleventh Circuit has established a three-part test that applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. *Landry v. Heckler,* 782 F.2d 1551, 1553 (11th Cir. 1986); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). This standard requires evidence of an underlying medical condition *and either* (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain. *Landry,* 782 F. 2d at 1553.

The Commissioner must consider a claimant's subjective testimony of pain if he finds evidence of an underlying medical condition and the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain. *Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry*, 782 F.2d at 1553. Thus, if the Commissioner fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Commissioner has, as a matter of law, accepted the testimony as true. This standard requires that the articulated reasons be supported by substantial reasons. If there is no such support, the testimony must be accepted as true. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).

As previously discussed, James was diagnosed as suffering from sleep apnea[8] and

---

[8] The court notes that James was diagnosed with sleep apnea and scheduled for surgery in July 2005. (R. 146-149.) Although the medical records do not include a surgical procedure for the treatment of sleep apnea, Dr. Hakim's summary of James' medical history indicates that James received oral surgery for his sleep condition at some point after July 2005. (R. 214.)

migraine headaches in 2005. In addition, he has been diagnosed as suffering from mild disc disease, including a generalized annular bulge at L4-5. Therefore, James meets the first prong of the pain standard.

However, the Commissioner determined that James' testimony of disabling pain was not credible. Specifically, the Commissioner determined that James failed to follow-up with treatment for obstructive sleep apnea or headaches, that an MRI of James' brain was normal and an MRI of his back evidenced only mild degenerative disc and facet changes with no herniated disc or stenosis, that he declined further injections, and that he failed to presented little evidence to support an allegation of disability. (R. 19.) The ALJ noted that "[i]t is reasonable to assume that if the claimant experienced the degree of pain and limitation that he alleges he has, he would at least attempt to get medical care" and that James' "testimony of disabling pain and functional restrictions is disproportionate to the objective medical evidence." (*Id*.)

This court has reviewed the record and concludes that substantial evidence in the record supports the ALJ's finding that the medical records are inconsistent with James' allegations that he suffers disabling pain. During the hearing, James testified that he had not sought treatment from any doctor over the past year, that the last time he received a refill of pain medication from Dr. Jones was in January 2007, and that he uses Tylenol and Advil for pain management. (R. 232, 235.) In addition, the medical records indicate that an MRI of James' brain was normal, that an MRI of James' back indicated mild disc disease with a generalized annular bulge at L4-5, and that James failed to receive epidural injections for

pain as instructed by his treating physician.  This court therefore concludes that the ALJ's determination that "[t]he record does not contain objective signs and findings that could reasonably be expected to produce the degree and intensity of pain and limitations alleged" and that there are "no diagnostic studies to show abnormalities that could be expected to produce such severe symptoms" is supported by substantial evidence. (R. 20.)

The sole remaining issue is whether this matter should be remanded to the Commissioner under 42 U.S.C. § 405(g) for consideration of new evidence presented by James to the Appeals Council on October 4, 2007.  James argues that the Appeals Council erred by failing to remand the case to the ALJ with instructions to review new evidence.  Specifically, he asserts that the Commissioner ignored Dr. Hakim's August 14, 2007, disability determination and clinical assessment of pain (R. 214-218), which was provided to the Appeals Council after the hearing before the ALJ.

New evidence presented to the Appeals Council, but not to the ALJ, may be considered by the court to determine whether remand is proper under 42 U.S.C. § 405(g). Section 405(g), in part, permits courts to remand a case to the Social Security Administration for consideration of new evidence under certain circumstances.  In order to prevail on a claim for remand under § 405(g) a claimant must show that (1) there is new, non-cumulative evidence; (2) the evidence is material, that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative hearing.  *See Vega v. Comm'r of Social Sec.,* 265 F.3d 1214, 1218 (11th Cir. 2001); *Falge v. Apfel*, 150 F.3d 1320, 1323

17

(11th Cir. 1998); *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987).[9]

In this case, the plaintiff argues that the Appeals Council ignored an August 14, 2007 report from Dr. Hakim, James' former neurologist. The medical records indicate that Dr. Hakim treated James for his complaints of headaches on October 18, 2005, and November 22, 2005. (R. 167-70, 193.) During the August 7, 2007, hearing before the ALJ, James testified that he did not return to Dr. Hakim for treatment because "[he] just didn't go back to see him," that he has headaches two or three times a week, and that he uses Tylenol and Advil for pain management. (R. 235, 238-39.) One week after the hearing, on August 14, 2007, Dr. Hakim conducted a disability determination physical and clinical assessment of pain. (R. 215.) During the physical, James reported that he suffered from headaches ranging about 9-10/10 in intensity which seemed to be slowly getting worse. (R. 214.) Upon considering James' reports, Dr. Hakim assessed that James suffered from "headache, appeared to be migraine and seemed to be frequent and increasing in intensity and having an average 12 headaches a month." (R. 215.) The neurologist also assessed that James suffers from a back condition and sleep apnea. (*Id.*) Although Dr. Hakim had not provided treatment to James since 2005, the neurologist concluded that James is disabled. (R. 216.)

The court concludes that Dr. Hakim's August 14, 2007 report is not material. First, the court questions whether Dr. Hakim may be considered James' treating physician, as the

---

[9]In *Ingram v. Commissioner of Social Sec. Admin.*, 496 F.3d 1253 (11th Cir. 2007), the Eleventh Circuit clarified the distinctions between new evidence submitted to and either considered or not considered by the Appeals Council and how that bears on the scope of review of a decision by the district court. Here, the scope of review is clear, and the court reviews the decision of the Appeals Council in light of the new evidence.

medical records and James' own testimony indicate that James had not sought treatment from the neurologist since 2005.  Furthermore, although Dr. Hakim treated James for his complaints of headaches on two occasions in 2005, nothing in the record indicates that the neurologist treated James for back pain or sleep apnea.  This court therefore concludes that the August 14, 2007 report would not change the Commissioner's decision to deny benefits.  The evidence simply does not satisfy the requisite criteria for remand under § 405(g) and therefore, remand is not proper.

Based on the foregoing, this court concludes that the Commissioner did not err as a matter of law and that the Commissioner's decision to deny benefits is supported by substantial evidence.

The Commissioner's decision denying benefits is due to be affirmed.  A separate final judgment will be entered.

Done this 22nd day of September, 2009.

/s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE